UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

ROBERT J. HUTCHINSON

   Plaintiff

v.                 Case No. 2020-CV-01264

JEFFREY KELLING; THOMAS C. TEFELSKE;
WENDY L. TEFELSKE; METALLURGICAL
ASSOCIATES, INC.; DOROTHY H. DEY;
OAKTON AVENUE LAW OFFICES, S.C.;
ESSERLAW LLC; PETER J. PLAUSHINES;
CRAMER, MULTHAUF & HAMMES, LLP; and
AMERICAN ASSOCIATION FOR
LABORATORY ACCREDITATION, INC.

   Defendants

## DEFENDANT AMERICAN ASSOCIATION FOR LABORATORY ACCREDITATION, INC.'S MOTION FOR RULE 11 SANCTIONS

Defendant, American Association for Laboratory Accreditation, Inc. ("A2LA"), by and through counsel, hereby moves for sanctions against Plaintiff, Robert J. Hutchinson ("Mr. Hutchinson"), pursuant to Fed. R. Civ. P. 11, and in support thereof states as follows:

### I. INTRODUCTION

A review of public court records demonstrates that Mr. Hutchinson is a habitual offender of judicially-sanctionable conduct, and the instant lawsuit is no exception.[1]

---

[1] Indeed, in his road that led here, Mr. Hutchinson has been sanctioned no fewer than five (5) times. *See, e.g., Robert J. Hutchinson v. Kohner, Mann & Kailas, S.C.*, Milwaukee County Case No. 2018CV3389 (sanctioned $7,500); *Kohner Mann & Kailas SC v. Metallurgical Associates, Inc., et al.*, Milwaukee County Case No. 2015CV6012 (sanctioned $5,000 and appeal affirmed by the Wisconsin Court of Appeals); *In re Old Metallurgical Associates, Inc.*, Waukesha County Case No. 2015CV2187 (twice sanctioned, for $5,500 and $5,049) ("Case No. 2015CV2187"); *Tefelske, et al. v. Metallurgical Associates, Inc., et al.*, Waukesha County Case No. 2012CV3673 (sanctioned $11,368.50). Mr. Hutchinson has paid only one of his five court-ordered sanctions after threat of jail.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

7609856_1

The sole basis for Mr. Hutchinson's claim for conversion against A2LA here is the A2LA accreditation issued to a metallurgical laboratory that Mr. Hutchinson has neither owned nor operated for more than four years. Despite his pre-lawsuit *express acknowledgement* that an A2LA "accreditation is site specific" such that it stays with a laboratory site rather than a laboratory owner—*and thus, there is no ownership interest to be converted*—Mr. Hutchinson nonetheless filed and maintains this lawsuit. Given the undisputed applicable facts and law, Mr. Hutchinson's claim against A2LA violates Rule 11.

**II.  PERTINENT BACKGROUND**

1.  Mr. Hutchinson and Jeff Tefelske owned a corporation, Metallurgical Associates, Inc., which operated a metallurgical testing laboratory. *See* Complaint at ¶ 29.

2.  Upon information and belief, at some point, Mr. Hutchinson agreed to buy out Mr. Tefelske's ownership interest in Metallurgical Associates, Inc. *See id.* Further upon information and belief, after a Wisconsin state court ordered Mr. Hutchinson to tender Mr. Tefelske's consideration for the deal (*see id.*), instead of satisfying the judgment entered against him, on or about November 4, 2015, Mr. Hutchinson initiated a receivership proceeding in Waukesha County Circuit Court on behalf of Metallurgical Associates, Inc. (*see* Case No. 2015CV2187). Thereafter, Metallurgical Associates, Inc. began to be known as "Old Metallurgical Associates, Inc." ("Old-MAI"). Complaint at ¶ 39.

3.  At the time that Old-MAI entered the receivership, it had an active International Organization of Standards ("ISO") accreditation for its laboratory located at 20900 Swenson Drive, Waukesha, Wisconsin 53186 (the "Swenson Lab Site"). That laboratory provided metallurgical testing and analysis to the manufacturing industry and was accredited by A2LA pursuant to Certificate #1529.01 to perform that work at that specific site (the "Swenson Lab Site Accreditation"). *See* Complaint at ¶ 141.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

4. A2LA defines accreditation as:

[A] formal recognition of competence that *a laboratory* can perform tests or calibrations. Accreditation is available to any type of testing or calibration *laboratory*, be it in the private sector … or in the government sector.[2]

5. After already having filed for receivership and thus knowing the fate of the Swenson Lab Site, on December 21, 2015, Mr. Hutchinson called A2LA to inquire about the effect of an "ownership transfer" on the Swenson Lab Site Accreditation. Thereafter, Mr. Hutchinson followed up with A2LA via electronic mail to confirm his understanding of the earlier telephone conversation about the "Accreutation [sic] Status Upon Ownership Transfer":

Dear Ashley,

Thank you for your assistance this morning.

It is my understanding from our conversation today that MAI's accreditation to ISO 17025 by A2LA would remain valid upon any change in ownership in the company and that procedures, if any, addressing such change in ownership are contained in A2LA [R101 – General Requirements].

Please let me know by email if I have misunderstood our conversation today as it has been described above.

Best wishes for a Blessed Christmas for you and yours.
Rob[3]

6. To be clear, the R101 – General Requirements that Mr. Hutchinson attached to and referenced in his December 21, 2015 email explicitly specified that "[a]ccreditation is site specific," meaning, it is not tied to an individual or an entity but instead, to the physical laboratory

---

[2] *See* R101 – General Requirements: Accreditation of ISO/IEC 17025 Laboratories ("R101 General Requirements") at "Part A: Introduction" attached to December 21, 2015 e-mail from Mr. Hutchinson to A2LA, a copy of which is attached hereto and incorporated herein as Exhibit 1.
While the receivership was pending, on or about January 13, 2016, Old-MAI renewed the Swenson Lab Site Accreditation.
[3] *See* December 21, 2015 email chain between Mr. Hutchinson and A2LA at p.2, a copy of which is attached hereto and incorporated herein as Exhibit 2.

3

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

(*i.e.* the Swenson Lab Site) that has been assessed and awarded the A2LA accreditation. *See, generally* R101 – General Requirements (Exhibit 1).

7. Consistent therewith, A2LA responded to Mr. Hutchinson as follows:

Hi Rob,

Yes, the general accreditation requirements are found in R101 and the specific requirement to notify A2LA of any changes in the organization within 30 days is found in R102 – Conditions for Accreditation (attached – item 12).

As we discussed on the phone, laboratories changing ownership is something we deal with on occasion and the *accredited locations are still entitled to maintain their accreditation, barring any major changes in personnel, equipment, facilities, quality management system, etc.*

I hope that this helps. Please let me know if you have any additional questions. Have a nice holiday!

Exhibit 2 at pp.1-2 (emphasis added).

8. Satisfied with A2LA's response, Mr. Hutchinson replied with: "Yes, I think that answers all. Thank you for your help." A2LA heard nothing further from Mr. Hutchinson in this regard. *Id.* at p.1.

9. In fact, it was not until on or about January 27, 2016, that A2LA learned from Mr. Tefelske that, pursuant to an Asset Purchase Agreement,[4] on the day prior, Mr. Tefelske's new company, New-MAI, had purchased the assets of Old-MAI out of receivership and had taken possession of the Swenson Lab Site.

10. As such, Mr. Tefelske requested that the Swenson Lab Site Accreditation be assigned from Old-MAI to New-MAI for it to continue the accredited operation of the Swenson Lab Site.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[4] A copy of the Asset Purchase Agreement is attached hereto and incorporated herein as Exhibit 3.

4

11. Consistent with A2LA's policy that accreditations are "site specific"—as Mr. Hutchinson had four weeks earlier made clear that he understood—A2LA obliged.

12. It was not until almost two months later, on March 23, 2016, when Mr. Hutchinson finally got around to notifying A2LA about the fact that Old-MAI no longer occupied the Swenson Lab Site and had moved its business address—*not a laboratory*—to W229 N9467 Norwauk Road in Colgate, Wisconsin.[5] At that time, Mr. Hutchinson requested for the first time that the Swenson Lab Site Accreditation "be placed on inactive status" since the Old-MAI currently was in receivership and thus, "testing and analysis had been suspended." *Id. See also* Complaint at 141.[6]

13. On March 25, 2016, A2LA responded to Mr. Hutchinson, reminding him that any ISO accreditation—including the Swenson Lab Site Accreditation—is specific to a particular site and not to an individual or an entity:

> A2LA accreditation is specific to a particular site. It is not uncommon for a laboratory to change ownership. *When this occurs, A2LA inquires of the laboratory with regard to any changes in personnel, equipment, facilities, technical capabilities, etc.* Upon review of all information related to this inquiry and, in some cases, after an on-site visit to the laboratory, the accreditation is continued, often without interruption. It is not a matter of your "selling" or "transferring" your accreditation to the laboratory's new owners. Continuation of the laboratory's accreditation is A2LA's decision to make after careful evaluation of the impact on the laboratory of the change in ownership. The only means by which an accreditation may be "transferred" is if the laboratory itself moved. It is our understanding that the laboratory itself remains at Swenson Drive and has not physically moved to the Norwauk Road location of Metallurgical Associates, Inc. If this in incorrect, please let us know.

Exhibit 4 at pp.4-5 (emphasis added).

14. Mr. Hutchinson quickly fired back and demanded that A2LA "review the situation with [its] legal advisor" and "immediately return Metallurgical Associate Inc.'s certificate of

---

[5] *See* March 23-April 15, 2016 e-mail chain between Mr. Hutchinson and A2LA at pp.5-6, a copy which is attached hereto and incorporated herein as Exhibit 4.

[6] Pursuant to Section XIV of the R101 – General Requirements, as cited by Mr. Hutchinson, "[t]he Inactive status ... can be given to a laboratory for no longer than one year, after which time the laboratory is removed from the A2LA system and designated as withdrawn." Exhibit 1.

STEIN SPERLING BENNETT DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

Accreditation to its rightful holder in your data base." *Id.* at pp.3-4. Thus, out of an abundance of caution, A2LA "inactivated" the Swenson Lab Site Accreditation until it could better understand the situation. *See id.* at p.3.

15. After an opportunity to conduct further due diligence, on April 4, 2016, A2LA reinstated the Swenson Lab Site Accreditation and notified Mr. Hutchinson of same:

> Since your email below, A2LA has been given the opportunity to review the "Asset Purchase Agreement" between New-MAI, Inc. and Metallurgical Associates, Inc. [Old-MAI], including the "Assets to be Purchased" and "Excluded Assets". The "Assets to be Purchased" includes the property, equipment and machinery in addition to intellectual property rights including "know how" (among many other things). In addition, the "Excluded Asset" list does not include the management system or any of its documentation. As such, we consider that the physical laboratory and its intellectual property (all of which were previously) assessed by A2LA) have been transferred to New-MAI and so the accreditation of New-MAI has been reinstated. That said, we are organizing a full, on-site assessment of New-MAI to occur, as soon as logistical arrangements can be made, in order to confirm compliance with all of A2LA's requirements and conditions for accreditation.
>
> We understand that Metallurgical Associates, Inc. [Old-MAI] may also, at some point, have a fully functioning laboratory, ready and able to be assessed and accredited by A2LA. We would be happy to welcome this laboratory's application for accreditation, waiving any new applicant fees so that you would only be responsible for the annual fee and assessor's expenses—so there will be no adverse financial ramifications for you or your organization.

*Id.*

16. Inexplicably unsatisfied even still, Mr. Hutchinson did not relent, desperately trying to entangle A2LA in a seemingly ongoing battle he was having with Mr. Tefelske. *See id.* at pp.1-3.

17. On April 16, 2016, A2LA responded to Mr. Hutchinson for the last time. Therein, A2LA tried to diffuse Mr. Hutchinson with further assurances that A2LA would assess any new laboratory that he were to open for the less expensive "renewal" fee (compared with a "new laboratory fee") while at the same time making clear to him that A2LA would not further engage

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

6

with him to the extent that it involved Mr. Tefelske, New-MAI and/or the Swenson Lab Site Accreditation.[7]

18. Mr. Hutchinson never responded. Nor did Mr. Hutchinson contact A2LA for it to assess the Norwauk Road site, because, as Mr. Hutchinson now has confirmed, he never opened a laboratory at that site—or any other site for that matter.

19. Now, after 4.5 years of silence, Mr. Hutchinson has concocted a claim that A2LA somehow converted "Plaintiff's corporation's ISO Accreditation." *See* Complaint at Count IV.

### III. PERTINENT LAW AND ARGUMENT

A. <u>Rule 11 Standard.</u>

Rule 11(b) of the Federal Rules of Civil Procedure states, in pertinent part:

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

Rule 11 is designed "to lend incentive for litigants to stop, think and investigate more carefully before serving and filing papers," *Berwick Grain Co. v. Illinois Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (internal quotations omitted), so that the "powerful, intimidating, and

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[7] *See* April 28, 2016 letter from A2LA to Mr. Hutchinson, a copy of which is attached hereto and incorporated herein as <u>Exhibit 5</u>.

often expensive" machinery of the federal judiciary is engaged appropriately, *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017). To this end, the Seventh Circuit has made clear that "Rule 11 authorizes a district court to impose sanctions on lawyers or parties (or both) for submissions that are filed for an improper purpose or without a reasonable investigation of the facts and law necessary to support their claims." *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001).

Even while courts generally will construe *pro se* filings liberally, *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001), a *pro se* litigant is not exempt from Rule 11, *Perry v. Barnard*, 911 F.2d 736, 1990 WL 121481, at *3-4 (7th Cir. 1990). In fact, the Seventh Circuit has faced *pro se* litigants similar to Mr. Hutchinson who are undeterred by monetary sanctions alone:

> Many pleadings and other papers filed in this court as in other courts have no legal merit whatsoever; they are frivolous, sometimes vicious, not infrequently demented. Most of these frivolous filings are by people who are not assisted by counsel or knowledgeable in the law. Some of these people find it very difficult to understand or, if they understand, accept the orders that this court issues terminating their frivolous litigation. They keep on filing. When monetary sanctions are levied on them for their obduracy, they refuse to pay. Their repetitive filings have no greater merit than their original filings, but the cumulative effect in clogging the processes of the court and in burdening judges and staff to the detriment of litigants having meritorious case is significant.

*Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 185 (7th Cir. 1995) (per curiam). In these instances, it is both necessary and appropriate for a district court to "direct the clerks of all federal courts in the circuit to return unfiled any papers that the litigant attempts to file, unless and until he pays in full the sanctions that have been imposed against him." *Id.* at 186.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

B.  Mr. Hutchinson's conversion claim against A2LA has no basis in law or fact and has been manufactured only to harass.

Conversion is "the intentional, unauthorized control of another's chattel so as to interfere with the owner's possessory rights." *Midwestern Helicopter, LLC v. Coolbaugh*, 839 N.W.2d 167, 170 (Wis. Ct. App. 2013). In order to prevail on a claim for common law conversion, a plaintiff must first plead—and later, prove—that the defendant: "(1) intentionally controls or takes property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's rights to possess the property." *Id*. Because the Swenson Lab Site Accreditation *never* belonged to Mr. Hutchinson, his claim for conversion fails on its face.

As a dispositive point, the R101 – General Requirements unambiguously alert applicants who seek A2LA accreditation that if granted, the "accreditation [will be] site specific" rather than specific to an individual owner or entity. This is not a reality that was not known to Mr. Hutchinson prior to his initiation of the instant litigation. In fact, as Mr. Hutchinson prepared to sell Old-MAI's assets in the receivership and to transfer the lease of the Swenson Lab Site to the asset's new owner, he clarified with A2LA what would become of the Swenson Lab Site Accreditation when all was said and done. *See* Exhibit 1 and Exhibit 2. It therefore is bad faith for Mr. Hutchinson now to insist otherwise.[8]

In any event, to the extent, *arguendo*, that anyone held a property interest in the Swenson Lab Site Accreditation, it certainly was not Mr. Hutchinson, and thus he has no standing to bring a claim for conversion in the first place. Indeed, even Mr. Hutchinson cannot credibly disagree, as

---

[8] Moreover, to the extent that Mr. Hutchinson complains that A2LA is guilty of conversion because it "denied [his] request to place his corporation's A2LA Accreditation ... on "inactive status" (Complaint at ¶ 141), this argument equally is without a good faith basis. Even assuming, *arguendo*, that Old-MAI ever qualified for "inactive status," the R101 – General Requirements make unambiguously clear that that status would have expired more than three (3) years ago, as Old-MAI never opened a new laboratory for which to reactivate the status. *See* Exhibit 1 at Section XIV. Therefore, there could never have been any interference with a supposed property interest— let alone a "serious" one.

9

STEIN SPERLING BENNETT DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

each time the Swenson Lab Site Accreditation is referenced in the Complaint, he refers to it as "*Plaintiff's corporation's* ISO Certification" (*See, e.g.,* Complaint at ¶ 86, 139, 140, 141 (emphasis added)), rather than as something that he in an individual capacity had a right to possess.[9]

WHEREFORE, American Association for Laboratory Accreditation, Inc. respectfully requests that this Honorable Court grant its Rule 11 Motion for Sanctions, impose sanctions in the form of an award to American Association for Laboratory Accreditation, Inc. of its attorneys' fees and cost incurred in defending the above-captioned lawsuit, along with its attorneys' fees and costs incurred in presenting this Motion, which fees and costs shall be presented by Affidavit at a time deemed appropriate by the Court, direct the clerk of all federal courts in the Seventh Circuit to return unfiled any papers that Mr. Hutchinson attempts to file, unless and until he pays in full the sanctions that have been imposed against him, and grant such other and further relief that this Court deems just and proper.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By: /s/ Judith G. Cornwell
Judith G. Cornwell
jcornwell@steinsperling.com
(301) 354-8314 (facsimile)
1101 Wootton Parkway, Suite 700
Rockville, Maryland 20852
(301) 350-2020

*Attorneys for American Association for Laboratory Accreditation, Inc.*

---

[9] Given Mr. Hutchinson's apparent track record with his prior legal counsel, it is not surprising that he has tried—albeit unsuccessfully—to avoid bringing this action on behalf of Old-MAI as "[i]t has been the law for the better part of two centuries that a corporation may appear in the federal courts only through licensed counsel." *Operating Engineers Local 139 Health Benefit Fund v. Rawson Plumbing, Inc.* 130 F.Supp.2d 1022, 1023 (E.D. Wis. 2001).

10

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301.340.2020

## CIVIL L. R. 7 CERTIFICATION

American Association for Laboratory Accreditation, Inc. does not intend to file any additional memorandum or other supporting papers relating to this Motion for Sanctions, other than a potential Reply Memorandum, if permitted.

/s/ Judith G. Cornwell<br>
Judith G. Cornwell

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that in accordance with Fed. R. Civ. P. 11(c)(2), a copy of the foregoing Motion for Sanctions[10] was served on the 30th day of September, 2020, via first-class mail, postage prepaid, and electronic mail upon the following:

Robert J. Hutchinson
5611 Forkwood Drive NW
Acworth, GA 30101
robh@metallytics.com

/s/ Judith G. Cornwell<br>
Judith G. Cornwell

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
1101 WOOTTON PARKWAY SUITE 700
ROCKVILLE, MARYLAND 20852

TELEPHONE 301-340-2020

---

[10] Attached hereto as <u>Exhibit 6</u> is a copy of the cover letter from undersigned counsel that accompanied the copy of the Motion for Sanctions served on Mr. Hutchinson on September 30, 2020.