# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERT J. HUTCHINSON,**

    **Plaintiff,**

  v.                                         Case No. 20-CV-1264

**JEFFREY KELLING,** *et al.*,

    **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS COMPLAINT

    This lawsuit is an attempt by plaintiff, Robert Hutchinson, to re-litigate a receivership action that originated in state court. Hutchinson sues his former long-time business partner, Thomas Tefelske; Tefelske's wife, Wendy Tefelske; Hutchinson and Tefelske's former business, Metallurgical Associates, Inc. ("MAI"); a state court appointed receiver, Jeffrey Kelling, and his counsel, Dorothy Dey; Dey's two employers during the course of the receivership action, Oakton Avenue Law Offices, S.C. and Esserlaw, LLP; the Tefelske's counsel, Peter Plaushines; Plaushine's employer, Cramer, Multhauf & Hammes, LLP; and Hutchinson's corporation's International Organization for Standards ("ISO"), American Association for Laboratory Accreditation, Inc. ("A2LA"). Hutchinson brings this action under 18 U.S.C. § 242, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), the Racketeer Influenced and Corrupt Organization Act ("RICO"), and state common law; however, 18 U.S.C. § 242 is a criminal statute for which there is no private cause of action, *see Ash v. Bias*, No. 14-C-0553, 2014 WL 3353251, at *4 (E.D. Wis. July 9, 2014), and he makes no specific claims pursuant to 42 U.S.C. § 1983 in the body of his complaint. (Docket # 1.)

The Tefelskes, MAI, Plaushines, and the Cramer firm file one motion to dismiss. (Docket # 22, as amended Docket # 27.) Kelling, Dey, and Esserlaw file a separate motion to dismiss. (Docket # 33.) Oakton Law also moves to dismiss. (Docket # 53.) These defendants' motions are based on multiple grounds, however, the primary argument is that Hutchinson's claims are barred by the *Rooker-Feldman* doctrine and thus this Court lacks subject matter jurisdiction. A2LA also moves to dismiss Count IV of the complaint, the only cause of action against it (Docket # 29), but moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons explained below, all defendants' motions to dismiss are granted and this case is dismissed.

## LEGAL STANDARD

Again, the defendants' (except A2LA) primary argument is that Hutchinson's lawsuit is barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine, stemming from two Supreme Court cases of the same name, *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), prevents lower federal courts from reviewing state-court judgments, over which only the United States Supreme Court has federal appellate jurisdiction. *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011). Thus, if the *Rooker-Feldman* doctrine applies, the court lacks subject matter jurisdiction over the action. *Id.* As a motion properly brought under Fed. R. Civ. P. 12(b)(1), I can look beyond the four corners of the complaint to determine this Court's jurisdiction. *Id.* at 646.

A2LA, however, moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must satisfy Rule 8(a) by providing a "short and plain statement of the claim showing that the pleader is entitled to relief. . . in order to give the defendant fair notice of what the. . . claim is and the grounds

upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley vs. Gibson*, 355 U.S. 41, 47 (1957)). Additionally, the allegations must suggest that the plaintiff is entitled to relief beyond the speculative level. *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). The Court must construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). However, a party may "plead itself out of court" by alleging facts that establish an "impenetrable defense" to its claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (internal citation omitted).

## BACKGROUND

Hutchinson and Thomas Tefelske were eighteen-year business partners in Metallurgical Associates, Inc., since rebranded as Old Metallurgical Associates ("Old MAI"). (Declaration of Alyssa A. Johnson in Supp. of Mot. to Dismiss ("Johnson Decl.") ¶ 4, Ex. 3, *Old Metallurgical Assocs. v. New Mai, Inc.*, 2019 WI App 21, ¶ 2, 386 Wis. 2d 630, 927 N.W.2d 929 (unpublished slip op.) (per curiam), Docket # 35-3.) When Tefelske decided to retire, the two agreed on a sum and the period over which Hutchinson would buy out Tefelske's interest. (*Id.* ¶ 3.) Hutchinson later failed to make the negotiated payments, and in 2012, Tefelske and his wife, Wendy Tefelske, sued Hutchinson and Old MAI for breach of contract. (*Id.*) The parties consented to a binding arbitration and the arbitrator found in favor of the Tefelskes. (*Id.*) The circuit court confirmed the arbitration award. (*Id.*) Tefelske acquired control of the trade name "Metallurgical Associates, Inc." (*Id.*)

In November 2015, Old MAI and Hutchinson filed for a Wis. Stat. ch. 128 receivership. (*Id.* ¶ 4.) Tefelske purchased most of Old MAI's assets through the receivership

3

action and Hutchinson retained control of the former, essentially asset-less, entity. (*Id.*) Tefelske then established "New MAI," with the understanding that the asset purchase included confidential customer records. (*Id.* ¶ 5.) For the next two years, Hutchinson disputed whether the assets sold to New MAI included the customer records, but did not seek a juridical determination of this point. (*Id.*) Tefelske and the appointed receiver ultimately agreed to give up their claims against Hutchinson in exchange for confirmation that Tefelske and New MAI owned the records. (*Id.*)

At a December 13, 2016 hearing in Waukesha County Circuit Court, Hutchinson's counsel read the parties' final agreement into the record and the court entered an order which stated as follows:

> The business book records and records of the Debtor [Old MAI] have been sold to and are owned by the Buyer [New MAI]. These records include, but are not limited to, all customer and job files, whether hard copies or electronic records.

(*Id.* ¶ 6.) This settlement did not end the story. Despite this Order, Hutchinson filed a motion in the companion Waukesha County civil case asking that the customer records be given to him. (*Id.* n.3.) The court denied the motion as frivolous and sanctioned Hutchinson. (*Id.*)

In November 2017, nearly a year after the receivership action was closed, Hutchinson moved to reopen the receivership case claiming that he still owns Old MAI's business books and records. (*Id.* ¶ 7.) Finding the motion frivolous, the court denied it and sanctioned Hutchinson. (*Id.* ¶¶ 7–8.) Hutchinson appealed. (*Id.* ¶ 8.) He argued that the court should have reopened the December 13, 2016 order because: (1) the court made a mistake regarding the ownership of the customer records; (2) fraud or misrepresentation occurred because the written decision cited the "wrong" hearing date and was not circulated to the parties until

4

after its execution; and (3) the written order did not match the parties' oral agreement. (*Id.* ¶ 10.)

On March 20, 2019, the Wisconsin Court of Appeals rejected all of Hutchinson's arguments. Notably, the court found that there was no mistake regarding the ownership of company "books and records" after the asset sale. The court stated that:

> Hutchinson plays fast and loose with what "books and records" means; he knows the parties are not knocking heads over general corporate books but over the customer lists essential to the business. Further his attorney read the parties' final agreement into the record at the December 13 hearing. The agreement made clear that Tefelske and New MAI owned all business records and that the agreement "constitutes the entire agreement between the parties concerning the subject matter herein and it supersedes all prior agreements between the parties."

(*Id.* ¶ 12.) Six months later, Hutchinson filed a complaint in the Northern District of Georgia naming all of the defendants in this case, plus defendant A2LA. (Johnson Decl. ¶ 5, Ex. 4, Docket # 35-4.) That lawsuit was dismissed for lack of personal jurisdiction. (Johnson Decl. ¶ 6, Ex. 5, *Hutchinson v. Kelling, et. al*, No. 19cv5672, ECF No. 79 (N.D. Ga. Aug. 3, 2020), Docket # 35-5.)

Two weeks after the dismissal of the federal lawsuit in Georgia, Hutchinson filed a 54-page complaint in this district. (Docket # 1.) Hutchinson alleges that Kelling was appointed as receiver to MAI on November 4, 2015 and illicitly changed the company's name to Old MAI. (Compl. ¶ 39.) He further alleges that on November 27, 2015, Kelling distributed a prospectus to prospective bidders of the assets of Hutchinson's company that specifically excluded as assets "all books and records of debtors." (*Id.* ¶ 42.) He alleges that Kelling filed a "receiver's motion to sell" on January 5, 2016 that specifically stated that the company's assets did not include the "books and records of debtors" (*id.* ¶ 43) and that the circuit court granted the motion (*id.* ¶ 44). Hutchinson alleges that on January 26, 2016, the Tefelskes and

5

their corporation, New MAI, purchased the eligible assets of Hutchinson's company and the signed Asset Purchase Agreement specifically excluded all "books and records of Debtors." (*Id.* ¶ 46.) Hutchinson alleges that his records comprised 94 bankers boxes of client project files, financial records, sales records, marketing material and records, banking records, personnel records, and other records that Hutchinson would need when his corporation emerged from receivership and resumed business. (*Id.* ¶ 52.)

Hutchinson alleges that Kelling illicitly altered the Articles of Incorporation of Hutchinson's corporation and used it to change the name of Hutchinson's company to Old MAI and to unlawfully convey the original name of the company—Metallurgical Associates, Inc.—to the Tefelskes. (*Id.* ¶ 53.) Hutchinson alleges that the Tefelskes then changed their company's name from New MAI to Metallurgical Associates, Inc., and by conspiracy with Kelling, Dey, Plaushines, Oakton Law, and the Cramer firm, assumed the identity of Hutchinson's corporation. (*Id.*)

Hutchinson further alleges that accreditation to ISO is essential for his industry and on March 25, 2016, Hutchinson received an email from his corporation's accreditor, A2LA, stating that his corporation's Certificate of Accreditation had been transferred to the Tefelskes' corporation after A2LA received assurances from the Tefelskes that they purchased Hutchinson's business. (*Id.* ¶¶ 54–55.) Hutchinson alleges that both Plaushines and Dey offered to buy Hutchinson's corporation's records and Hutchinson declined. (*Id.* ¶¶ 65–67.) Hutchinson alleges that Dey then offered to withdraw the receivership's claim against Hutchinson and to abandon any claim on Hutchinson's corporation's records if Hutchinson dropped his $53,000.00 claim against the receivership for the personal loan made to the corporation by Hutchinson and his wife. (*Id.* ¶ 68.) Hutchinson alleges that he agreed, and his

attorney negotiated, a settlement agreement that did *not* sell his corporation's records, but allowed them to be stored at the Tefelskes' office and to be used by the Tefelskes on the condition that Hutchinson would receive copies of the records so that his corporation could again use them when it emerged from receivership. (*Id.* ¶ 69.) Hutchinson alleges that when he was placed under oath on the record on December 9, 2016, he believed he was agreeing to that deal, and neither Dey nor Plaushines asked any specific questions regarding the agreement. (*Id.* ¶ 71.) Hutchinson alleges that he was shocked to discover, weeks after the December 13, 2016 hearing, that the order closing the receivership stated that Hutchinson's books and records were sold and owned by the Tefelskes and MAI. (*Id.* ¶ 74.)

## ANALYSIS

*1. Defendants' Motions to Dismiss on Rooker-Feldman Grounds*

Although the defendants (except A2LA) raise multiple grounds for dismissal, as the *Rooker-Feldman* ground implicates this Court's subject matter jurisdiction, I will address it first. Again, federal district courts do not have jurisdiction over cases brought by parties who lost in state court and who seek relief from injuries caused by that prior state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). As such, under the *Rooker-Feldman* doctrine, a lower federal court cannot review, modify, or reverse a judicial determination made by a state court, even if that determination is challenged as erroneous or unconstitutional. *See Swartz v. Heartland Equine Rescue,* 940 F.3d 387, 390 (7th Cir. 2019). As explained by the Supreme Court, *Rooker-Feldman* is a narrow doctrine, "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. Under this doctrine, when

determining if a federal plaintiff is seeking to review a state court judgment, a court must determine whether the injury alleged in the federal complaint resulted from the state court judgment. *O'Malley v. Litscher*, 465 F.3d 799, 802 (7th Cir. 2006). If so, *Rooker-Feldman* bars the claim.

*Rooker-Feldman* also prohibits indirect attempts to undermine state court decisions. The Seventh Circuit has repeatedly held that even where a federal plaintiff's claims "do not on their face require review of a state court's decision," *Rooker-Feldman* still applies if those claims are "'inextricably intertwined' with a state-court judgment, except where the plaintiff lacked a reasonable opportunity to present those claims in state court. *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007). In *Rizzo v. Sheehan*, the Seventh Circuit outlined the appropriate inquiry under the doctrine:

> In order to determine the applicability of the *Rooker–Feldman* doctrine, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, the *Rooker–Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional. If, however, the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not 'inextricably intertwined' with the state judgment . . . *Rooker–Feldman* does not [apply]. Thus, the pivotal inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether [she] is, in fact, presenting an independent claim.

266 F.3d 705, 713 (7th Cir. 2001) (internal quotations and citations omitted).

At its heart, the *Rooker-Feldman* doctrine is grounded in the principles of comity, federalism, and finality. It is intended to safeguard state court decisions from review by lower federal courts. Stated differently, lower federal courts are precluded from acting as courts of appeals for state court judgments. The Supreme Court of the United States is the only federal

8

court that has jurisdiction to review a state court judgment. *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012).

Despite Hutchinson's assertions to the contrary, his current complaint is simply a repackaging of the issues he lost before the Waukesha County Circuit Court in Case No. 2015CV2187. Hutchinson had the right to appeal, which he did, to the Wisconsin Court of Appeals. The court of appeals clearly considered and rejected Hutchinson's argument regarding the sale and ownership of MAI's "books and records." Hutchinson now brings the exact same claims, albeit dressed as federal racketeering and civil rights claims, for this Court to re-review. Again, lower federal courts are *not* courts of appeals for the state courts. But Hutchinson specifically implores this Court to act as such, seeking review of the state court docket and a grant of the following relief:

> WHEREFORE, Upon the Court's review of the above cited documents, Plaintiff respectfully requests that this Court enter declaratory judgment affirming Plaintiff's title to, and ownership, of all books and records of Metallurgical Associates, Inc. as of January 25, 2016, and for reasonable fees and costs incurred in affirming Plaintiff's ownership of said books and records and in bringing this action.

(Docket # 1 at 51.) In additional to his request that I overturn the state court's order, he asks for various other damages related to the alleged fraud perpetrated by the defendants. All of his claims, whether framed as fraud, RICO, or civil rights violations, are merely a request to overturn the state court's order approving a settlement agreement transferring ownership of Hutchinson's books and records to the Tefelskes and New MAI. This I cannot do. For these reasons, I find that Hutchinson's claims against these defendants are barred by the *Rooker-Feldman* doctrine and are dismissed for lack of subject matter jurisdiction.

2. *A2LA's Motion to Dismiss for Failure to State a Claim*

Hutchinson raises a single claim against A2LA, a state law conversion claim. (Compl., Count IV.) He alleges that A2LA converted Hutchinson's corporation's ISO Accreditation and conveyed it to the Tefelskes and their corporation under the false pretense that the Tefelskes and their corporation purchased Hutchinson's company. (Compl. ¶ 139.) A2LA moves to dismiss Hutchinson's claim against it, arguing that he pled himself out of court by alleging that A2LA converted *his corporation's* property, not Hutchinson's. As his complaint alleges Hutchinson lacks a possessory interest in the corporation, he cannot establish the elements of common law conversion, which include: (1) intentional control or taking property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the owner's rights to possess the property. *Midwestern Helicopter, LLC v. Coolbaugh*, 2013 WI App 126, ¶ 9, 351 Wis. 2d 211, 217, 839 N.W.2d 167, 170.

I agree that Hutchinson's complaint does not properly state a claim for conversion against A2LA because while he alleges in his complaint that he believes he *should* have a possessory interest in MAI, he does not. Without an ownership interest, he cannot bring a claim of conversion on behalf of MAI. And given this is a failing that cannot be cured through amendment of the complaint, I find that Count IV against A2LA is dismissed with prejudice.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** that the motions to dismiss filed by the Tefelskes, MAI, Plaushines, and the Cramer firm (Docket # 22, as amended Docket # 27); Kelling, Dey, and Esserlaw (Docket # 33); and Oakton Law (Docket # 53) are **GRANTED**. These claims are dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that A2LA's motion to dismiss (Docket # 29) is **GRANTED**. This claim is dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend (Docket # 40) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Use CM/ECF (Docket # 73) is **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay (Docket # 76) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Take Judicial Notice (Docket # 91) is **MOOT**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**;

**FINALLY, IT IS ORDERED** that the Clerk of Court shall enter a judgment accordingly.

Dated at Milwaukee Wisconsin this 14th day of June, 2021.

BY THE COURT

_Nancy Joseph_
NANCY JOSEPH
United States Magistrate Judge